UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JAMES WESLEY HUNT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:07-CV-287 RM |
| | ) | |
| BRIAN MILLER, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

James Hunt, a prisoner currently confined at the Porter County Jail, filed a complaint pursuant to 42 U.S.C. § 1983, alleging that the United States Marshal and Hammond City Jail officials violated his federally protected rights while he was confined at the Hammond Jail. Pursuant to 28 U.S.C. § 1915A(a), the court shall review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The court must dismiss an action against a governmental entity or officer or employee of a governmental entity if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(b). Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy

>RULE 8's notice pleading minimum and RULE 9(b)'s requirement that motive and intent be pleaded generally.

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

>Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a RULE 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___; 127 S.Ct. 1955, 1964-65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

>While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, RULE 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3 (quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 127 S.Ct. at 1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (quotation marks omitted).

Mr. Hunt brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984). To state a claim under § 1983,

2

a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. West v. Atkins, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 140 (1979).

Mr. Hunt is a federal detainee who was confined at a police jail operated by the city of Hammond. In Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988), a pretrial detainee protested jail conditions. The court observed that "the conditions at the Marshall County Jail may be far from ideal. But again, the Marshall County Jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels. In order to make out a claim under 42 U.S.C. § 1983, Martin must show that intentional actions of the defendants served to deprive him of a constitutional right. He has not been Constitutionally harmed here." Martin v. Tyson, 845 F.2d at 1457 (citations omitted).

In his complaint's first rhetorical paragraph, Mr. Hunt states that when he arrived at the jail he told officials that he was preparing a prisoner civil rights complaint against Atlanta, Georgia, and requested scribe materials, postage, and other services he needed to prepare and file that complaint. He alleges that Hammond Jail officials did not provide him any assistance. Mr. Hunt was at the Hammond Jail for three months, and is now at the Porter County Jail.

To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by Bounds v. Smith, 430 U.S. 817 (1977), and show that he suffered actual injury. Lewis v. Casey, 518 U.S. 343, 351 (1996) (holding that Bounds v. Smith did not eliminate the actual-injury requirement as a

3

constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials" Lewis v. Casey, 518 U.S. at 2181 n. 4 (emphasis in original). Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency. Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied*, 479 U.S. 1019 (1986).

If Hammond Jail officials routinely deny prisoners access to scribe materials and postage, they will probably eventually violate a prisoner's right of access to the courts. But it doesn't appear that they violated Mr. Hunt's federally protected rights because delay and inconvenience do not rise to the level of a constitutional deficiency. That Mr. Hunt may have been delayed in filing his complaint states no claim upon which relief can be granted. As long as Mr. Hunt is able to prepare and file his complaint within the statute of limitations, Hammond Jail officials have not denied him access to the courts. Mr. Hunt was able to file this complaint after he arrived at the Porter County Jail.

In rhetorical paragraph two of his complaint, Mr. Hunt asserts that the Hammond Jail has no law library or legal materials, and that "nothing of any kind is provided for the Federal inmates who face incarceration periods of over 12 months awaiting trial." A pre-trial detainee who is without counsel needs the tools necessary to prepare his defense, but jail officials are not required to provide legal materials to an inmate who "was represented by counsel on his criminal charges." Martin v. Tyson, 845 F.2d at 1457. Mr. Hunt doesn't allege that he was not represented by an attorney, and the docket in his pending criminal case, United States of America v. James W. Hunt, 2:06cv106 JM, establishes that he is

4

represented by counsel in the federal criminal proceedings against him. Accordingly, the allegation that the Hammond Jail did not have materials that would assist a federal prisoner in preparing for his criminal trial states no claim upon which relief can be granted.

In rhetorical paragraph three of his complaint, Mr. Hunt alleges that the Hammond Jail has no medical service department; in paragraph eleven, he alleges that when he arrived at the jail "there was no nurse or medical person on hand to provide a medical evaluation of me;" and in paragraph nine, he asserts that on July 25, 2007, an inmate stabbed him in the face and that because the jail had no medical department he received no treatment for over fourteen hours.

Mr. Hunt seeks damages for conditions of confinement at the Hammond Jail while he was held there as a pretrial detainee. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause, *Id.* at 535 n. 16. But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." Martin v. Tyson, 845 F.2d at 1457. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

Mr. Hunt does not allege that he suffered any actual harm from not having a medical evaluation when he arrived at the Hammond Jail, and that a nurse was not on hand to conduct an intake evaluation states no claim upon which relief can be granted. Similarly, that a small jail has no full time medical staff, by itself, states no Eighth Amendment claim upon which relief can be granted — though failure to otherwise provide for inmates' medical care might. Accordingly, the court will dismiss the claims presented in rhetorical paragraphs three and eleven of the complaint.

In paragraph nine, Mr. Hunt alleges that after another inmate attacked him, jail officials delayed his medical treatment for over fourteen hours. "Fed. R. Civ. P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998), quoting Hishon v. King & Spalding, 467 U.S. at 73, 104 S.Ct. 2229. Giving Mr. Hunt the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of facts consistent with his Eighth Amendment failure to treat claim presented in paragraph nine of his complaint.

In paragraph four of his complaint, Mr. Hunt alleges that the Hammond Jail did not offer any form of religious services or provide a chaplain. Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991). Mr. Hunt does not allege, as do most prisoners raising claims under the First Amendment's free exercise clause, that jail officials would not allow him to pray, obtain prayer oil, possess religious symbols or paraphernalia or follow a diet

6

prescribed by his religion, nor does he allege that the jail prevented him from writing or calling a minister to visit him at the jail. The Constitution allows jails and prisons to employ chaplains to provide religious services, Johnson-Bey v. Lane, 863 F.2d 1308 (7th Cir. 1988), but the First Amendment's free exercise clause does not require small jails to hire chaplains or take other affirmative steps to assist prisoners in practicing their religion.

In rhetorical paragraph five, Mr. Hunt alleges that the Hammond Jail did not provide inmates with underwear or socks, and that "those who are indigent must go without underwear for their whole time there unless other inmates provide them with underwear." If jail officials did not provide underwear to an indigent prisoner who did not have his own, and the prisoner suffered actual harm, then it might state a claim upon which relief could be granted. But Mr. Hunt does not allege that he suffered any actual harm from this policy. Indeed, he does not even allege that he was one of the prisoners who may have been without underwear. Mr. Hunt may not assert the rights of any other inmate because he lacks standing to do so. *See* Elk Grove Unified School District v Newdow, 542 U.S. 1, 12 (2004).

In paragraph six, Mr. Hunt alleges that the Hammond Jail did not have a food service department, and that it contracted with a fast food restaurant to provide daily meals for the inmates. Mr. Hunt asserts that the meals served at the jail had no nutritional value, were high in fat, transfat, salt and other unhealthy contents, did not provide a balanced diet, and lacked fruits and vegetables. Mr. Hunt also alleges that has a high blood pressure problem which requires him to closely monitor his diet.

The Constitution requires that inmates receive adequate amounts of nutritious food, *See* Farmer v. Brennan, 511 U.S. at 832. Conditions that would violate the Eighth

7

Amendment over a long period of time may not constitute a constitutional violation if imposed for short periods of time. *See* Jones-Bey v. Wright, 944 F.Supp. 723, 732 (N.D. Ind. 1996). But giving Mr. Hunt the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that providing an inadequate and unhealthy diet to a prisoner with high blood pressure for three months states no claim upon which relief can be granted.

In paragraph seven, Mr. Hunt alleges that he "received in the mail the prisoners' civil rights complaint package. The legal mail from the court was opened and read." The purpose of preventing jails and prisons from opening legal mail outside of the presence of an inmate is to protect the Sixth Amendment right to counsel and the attorney-client privilege by ensuring that prison officials merely inspect for contraband and do not read confidential communications between an inmate and his counsel.

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar. As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.

Wolff v. McDonnell, 418 U.S. 539, 576-577 (1974). *See also* Kaufman v. McCaughtry, 419 F.3d 678, 686 (7th Cir. 2005)("[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence.")

Mr. Hunt is incorrect in characterizing the envelope he received from the court as legal mail; it was not labeled confidential nor was it from his attorney. Rather it was an envelope sent to Mr. Hunt by a court containing blank forms. This material is not subject to attorney-client privilege and did not need to be opened in his presence. Such mail is no different than this court order which is also not "legal mail." This order is entered in the public record and can be read by anyone. It is not confidential, and Mr. Hunt suffers no injury if jail officials read it.

Mr. Hunt also suggests that shortly after jail officials opened the envelope containing blank forms, they transferred him to the Porter County Jail "to hinder and stop my access to the courts." (Complaint at p. 5). But even if that was the jail officials' intent, transferring Mr. Hunt to another facility hardly prevented him from having access to the courts. Indeed, that Mr. Hunt was able to file this action establishes that his transfer to the Porter County Jail did not prevent him from filing a complaint dealing with his confinement in the Hammond Jail.

In paragraph eight, Mr. Hunt alleges that his cell at the Hammond Jail "came equipped with a camera . . . positioned to see and record any an all actions in the cell by an inmate." He alleges a violation of his "rights to Bodily Privacy" because the camera could be used by female correctional officers to monitor his cell. But that the jail may assign female officers to watch the security camera monitoring his cell does not violate any right to privacy:

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal

> order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Hudson v. Palmer, 468 U.S. 517, 527 (1983) (citations, quotation marks, and brackets omitted).

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After Wolfish and Hudson, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *
>
> Surveillance of prisoners is essential, as Wolfish establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections Wolfish held permissible. Guards do the surveillance. Male guards and female guards too . . ..
>
> * * *
>
> [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995). Accordingly, Mr. Hunt's claim that female guards might have watched him while he was undressed or on the toilet has no merit.

In paragraph ten, Mr. Hunt alleges that the Hammond Jail did not provide sheets to federal detainees and gave them blankets that were only exchanged once a month, putting them at risk of staph disease. The Constitution doesn't mandate comfortable prisons or jails, and "only those deprivations denying "'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. at 298, quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A plaintiff asserting an Eighth Amendment claim must show that objectively, the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation,

and subjectively, that the defendant acted with deliberate indifference. Farmer v. Brennan, 511 U.S. at 834. Mr. Hunt alleges no actual harm from using the same blankets for a month, and the defendants' actions did not deprive him of the minimal civilized measure of life's necessities.

In addition to jail officials, Mr. Hunt names the United States Marshal as a defendant. He asserts that the Marshal knew that Federal prisoners could be housed at the Hammond Jail for many months and "that the inmates housed at such a place would suffer from the lack of treatment due to the sub-standard type facility. Therefore, the Marshal must be held accountable for these conditions." (Complaint at p. 10). Because United States Marshal does not act under color of state law, Mr. Hunt may not bring a § 1983 claim against him. But he may bring claims that persons acting under color of federal law violated his Constitutional rights in a Bivins Action. *See* Bivins v. Six Unknown Named Agents, 403 U.S. 388 (1971).

Section 1983 creates a cause of action for damages based on personal liability. Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). The same is true of Bivins actions against federal officials. Ghandi v. Police Department of the City of Detroit, 747 F.2d 338 (6th Cir. 1984). A person cannot be held liable under § 1983 or in a Bivins action unless the person was personally involved in the alleged wrongdoing. The Marshal was not responsible for operating the Hammond Jail, and Mr. Hunt appears to rely on the doctrine of respondeat superior to hold him responsible for actions by jail officials stating that he should have known of the conditions at the Hammond Jail. But the doctrine of *respondeat superior*, under which a person may be held liable for his subordinates' actions, has no application to § 1983 or Bivins actions.

Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993); Ghandi v. Police Department of the City of Detroit, 747 F.2d at 344.

      For the foregoing reasons, the court:

      (1) GRANTS the plaintiff leave to proceed against defendants Brian Miller, Patrick McKechnie, and Ron Frey for damages on the claims presented in paragraphs six and nine of the complaint;

      (2) Pursuant to 28 U.S.C. § 1915A(b)(1); DISMISSES the United States Marshal, and DISMSSES all other claims presented in the complaint;

      (3) Pursuant to 42 U.S.C. § 1997e(g)(2), ORDERS that the defendants respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

      (4) DIRECTS the marshals service to effect service of process on defendants Miller, McKechnie, and Frey on the plaintiff's behalf, and DIRECTS the clerk's office to ensure that a copy of this order is served on them along with the summons and complaint.

      SO ORDERED.

      ENTERED: September  28 , 2007

                                    /s/ Robert L. Miller, Jr.
                                    Chief Judge
                                    United States District Court