UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| JAMES WESLEY HUNT, | ) | |
|---|---|---|
| Plaintiff | ) | |
| vs. | ) | CAUSE NO. 2:07-CV-287 RM |
| BRIAN MILLER, *et al.,* | ) | |
| Defendants | ) | |

## OPINION AND ORDER

Plaintiff James Hunt submitted a complaint under 42 U.S.C. § 1983, alleging that Hammond Police Chief Brian Miller, Hammond City Jail Commander Lieutenant Patrick McKecknie, Sergeant Ronald Frey, and the United States Marshals Service violated his federally protected rights while he was confined at the Hammond City Jail. The court screened Mr. Hunt's complaint under 28 U.S.C. § 1915A, and allowed him to proceed against defendants Miller, McKechnie, and Frey for damages on the claim presented in paragraph six of his amended complaint, in which he alleged that they didn't provide him a nutritious and healthy diet, and on his claim in paragraph nine that they didn't provide him timely medical attention after another inmate attacked him. The court dismissed the United States Marshal and all other claims. On May 5, 2008, the court granted Mr. Hunt's motion to reconsider the screening order to the extent that it also allowed him to proceed on his claim, contained in paragraph three of his complaint, that jail officials didn't provide him with prescribed medication for a serious medical need.

Last August 14, the court granted defendant Miller's motion for summary judgment on the basis of lack of personal involvement. (Docket #136). Defendants McKecknie and Frey filed a motion to dismiss, which the court converted to a summary judgment motion, asserting that Mr. Hunt didn't exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Alternatively, the defendants also present arguments and evidence on the merits of Mr. Hunt's claims. Mr. Hunt responded to the motion to dismiss, but didn't submit his own affidavit. The court warned Mr. Hunt pursuant to Kincaid v. Vail, 969 F.2d 594 (7th Cir. 1992), Timms v. Frank, 953 F.2d 281 (7th Cir. 1992), and Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982) of the consequences of not submitting an affidavit stating facts opposing the defendants' submissions, and gave him extra time within which to respond to the defendants' summary judgment motion. Mr. Hunt has filed no further response to the defendants' dispositive motion. For the reasons that follow, the court grants the defendants' motion for summary judgment.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477

> U.S. at 324.
>
> . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before filing a § 1983 claim regarding conditions of confinement. Booth v. Churner, 532 U.S. 731 (2001); Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002), quoting Porter v. Nussle, 534 U.S. 516, 122 (2002). Exhaustion of administrative remedies is a condition precedent to suit in federal court. Perez v. Wisconsin Dept. of Corrections, 182 F.3d at 335. When exhaustion has been raised as a defense, the court is to resolve issues relating to exhaustion before proceeding to the merits. Pavey v. Conley, 544 F.3d 739, 741 (7th Cir. 2008).

The defendants submit affidavits, copies of Hammond Police Department Jail Inmate Handbooks, copies of Mr. Hunt's pre-booking form, a medical screening form, and a copy of Mr. Hunt's written complaint to Lieutenant

McKechnie. The defendants assert that the inmate handbooks established a "verbal" grievance policy and advised the inmates of that policy. They also argue that Mr. Hunt could have presented grievances to the United States Marshals Service. According to the defendants, Mr. Hunt never voiced complaints about any of the claims before the court to either the defendants or to the Marshals Service.

Mr. Hunt was at the jail from May 9, 2007, until July 26, 2007. When he arrived at the jail, the jail handbook in effect contained the following entry:

> **Questions/Comments:**
>
> All questions and comments shall be directed to the Federal Officer[1] on Duty. At no time shall you talk directly to the Jail Commander without first discussing your question or concern with the Federal Officer on duty.
>
> **The Jail Commander has the final say on all matters.**

(Docket #142-2, Exhibit A at p. 3) (Emphasis in original).

While Mr. Hunt was at the jail, a revised handbook, dated May 21, 2007, was distributed to inmates. This handbook contained the following entry:

> Questions/Comments:
>
> All questions and comments shall be directed to the Federal Officer on Duty. At no time shall you talk directly to the Jail Commander without first discussing your question or concern with the Federal Officer on Duty.

Docket #142-2, Exhibit B at p. 1).

The defendants submit their own affidavits and the affidavits of Deputy

---

[1] The jail defines a federal officer as a jail officer who was "in charge of federal inmates" at the jail. (docket #141-3, exhibit 2 at p. 1).

4

United States Marshals Chris Kundsen and Joel Kirch. Sgt. Frey, a "federal officer" at the jail, states that "at no time while he was incarcerated at the Hammond City Jail did James Wesley Hunt voice any grievance to me about any problem he had with high blood pressure, or the need for any medication to treat that condition, or about any concern that the food he was served posed any risk to that condition or any other health conditions." (DE 141-3 ¶ 5). Lieutenant McKechnie says Mr. Hunt never communicated with him "verbally or in writing, any grievance about the food he was served or about any problem he had with high blood pressure or the need for any medication." (DE 141-2 ¶ 8). Deputy Marshal Kirch states that as a federal pretrial detainee, Mr. Hunt could have complained to the Marshals Service about conditions at the jail, and that "Mr. Hunt has written to the U.S. Marshals Service about certain grievances he ha[d] with certain jails in which he has been incarcerated. He did not write to complain about any health care or dietary issues he purportedly had while at the Hammond City Jail. Had he done so, the United States Marshals Service would have investigated the matter and acted accordingly." (Docket #141-5, ¶ 7).

Section 1997e(a) states that a prisoner may not bring a case pursuant to § 1983 until he has exhausted "such administrative remedies as are available." Under 42 U.S.C. § 19973(a), A prisoner must "complete a prison administrative process that could provide some sort of relief on the complaint stated . . . ." Booth v. Churner, 532 U.S. at 734. "The Supreme Court has also noted that corrective action taken in response to a grievance might satisfy the prisoner, thus obviating

5

the need for the litigation, or alert prison authorities to an ongoing problem that they can correct." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), citing Porter v. Nussle, 534 U.S. at 524-525.

A verbal grievance procedure provides a remedy that could provide some sort of relief to an inmate, and corrective action taken as a result of an inmate's verbal grievance might satisfy the inmate and obviate the need for litigation. Accordingly, the court accepts that the Hammond Jail policy constituted an available grievance procedure within the meaning of § 1997e(a).[2] A complaint or grievance to the United States Marshals Service also could have resulted in corrective action and avoided litigation.

Because the defendants met their initial obligation under Fed. R. Civ. P. 56, the burden fell upon Mr. Hunt to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, would allow a fact finder to decide in his favor the question of whether he exhausted his administrative remedies on the claims he raises in his complaint. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Mr. Hunt did not submit his own affidavit, or other evidence asserting that he presented his claims in grievances. Mr. Hunt submitted legal arguments (dockets ## 126, 129, 140, and 151), and the affidavits of Clarence Oliver (docket #126-2) and Jason

---

[2] There are strong potential drawbacks for a facility using a verbal grievance system, which provides no written records of inmate grievances. If the officials to whom a plaintiff's verbal grievance was to have been directed are no longer available, then the defendants will be unable to prove their § 1997e(a) defense. Moreover, if an inmate responds to a summary judgment motion with a sworn statement that he verbally grieved the issues he is presenting to the court it will almost inevitably create a disputed issue of fact.

McGee (docket #126-3). These inmates state that in their opinion there was no non-verbal grievance process at the jail, a claim the defendants do not dispute.

Although in docket #157, the court warned Mr. Hunt, pursuant to Kincaid v. Vail, 969 F.2d 594 (7th Cir. 1992), Timms v. Frank, 953 F.2d 281 (7th Cir. 1992) *cert. denied,* 504 U.S. 957 (1992), and Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982), of the consequences of not submitting an affidavit stating facts opposing the defendants' dispositive motion, Mr. Hunt has not submitted his own affidavit. Because he hasn't come forth with admissible evidence that he grieved the issues before the court either to jail officials or the Marshals Service, Mr. Hunt hasn't met his burden of coming forth with evidence sufficient, if viewed reasonably in his favor, to allow the court to decide the question of exhaustion of administrative remedies in his favor.

Alternatively, the defendants presented arguments and evidence on the merits of Mr. Hunt's claims. Where a defendant asserts that a prisoner has not exhausted his administrative remedies a district court must not proceed to render a substantive decision on an inmate's claims until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which courts must respect if a defendant chooses to invoke it." *Id.* at 536. (emphasis in original). Here, however, the defendants presented their claims alternatively, placing both procedural and substantive issues before the court.

The defendants' submissions establish that the Hammond City Jail is one of the facilities in this district where the United States Marshals Service houses

federal pretrial detainees, and that Mr. Hunt was housed there from May 9 until July 26, 2007. Because the Hammond Jail is a small facility without an on-site medical staff, the Marshals Service does not house inmates with pre-existing medical problems there. (Docket ## 141-2 ¶2, 141-5 ¶3). Deputy Marshal Knudsen states in his affidavit that as part of the process of transferring Mr. Hunt to the jail, he asked Mr. Hunt whether he had any known medical problems or diet restrictions. Mr. Knudsen states that "Mr. Hunt at first indicated he had an ailment but then indicated he no longer had such problems; and he denied having an other medical problems or diet restrictions," (Docket #141-4, ¶ 3), that Mr. Hunt "denied taking any medications," (*Id.* ¶ 8), and that "[a]t no time did Mr. Hunt inform me of any problem with high blood pressure, or any health-related concerns about the food he received at the Hammond City Jail." (*Id.* ¶ 9). The defendants submitted copies of the pre-booking form and a Medical Acceptance Screen which confirm Deputy Marshal Kundsen's statements. Mr. Hunt signed the Medical Acceptance Screen stating that he didn't have any medical problems, wasn't taking any medications, and wasn't using any non-prescribed drugs.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is serious enough to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991).

Deliberate indifference is comparable to criminal recklessness, and is shown

by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." <u>Duane v. Lane</u>, 959 F.2d 673, 677 (7th Cir. 1992) (citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

The defendants submitted evidence that Mr. Hunt advised the Marshals Service and the defendants that he had no medical problems, prescribed medication, or dietary requirements. Mr. Hunt has not responded, and there is no evidence before the court contesting the defendants submissions. Mr. Hunt can't meet the subjective prong of the <u>Farmer</u> test because the defendants' submissions establish that he told the them and the Marshals Service that he did not have medical problems, prescribed medication or dietary requirements.

In paragraph nine of his complaint, Mr. Hunt alleges that jail officials delayed his medical treatment for more than fourteen hours after another inmate attacked him. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Because deliberate indifference is comparable to criminal recklessness, <u>Farmer v. Brennan</u>, 511 U.S. at 837, a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. <u>Estelle v. Gamble</u>, 429 U.S. at 105-107; <u>Billman v. Indiana Department of Correction</u>, 56 F.3d 785 (7th Cir. 1995). He must show "something approaching a total unconcern for [his]

9

welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992), *citing* McGill v. Duckworth, 944 F.2d 344 (7th Cir. 1991). The defendant must have known of and disregarded an "excessive risk" to the inmate's health or safety. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994), *quoting* Farmer v. Brennan, 511 U.S. at 837-838.

Sgt. Frey states that when he arrived at work on the day shift on July 26, 2007, an officer informed him that two federal inmates had been involved in an altercation. He states that he "interviewed both inmates. Mr. Hunt had a small cut above his upper lip." (Docket # 141-3, ¶ 8). According to Sgt. Frey, "[a]t no time while I spoke with Mr. Hunt did he request medical assistance." (*Id.* ¶9). According to Sgt. Frey "[a]t approximately 1:00 p.m. Hunt advised jail staff that he wanted medical attention. I contacted the U.S. Marshals Service, and shortly afterward, deputy U.S. Marshal Chris Knudsen arrived to remove Hunt from the Hammond City Jail." (*Id.* ¶11).

Deputy Marshal Knudsen states that he transported Mr. Hunt from the jail to the hospital. According to Mr. Kundsen, "Mr. Hunt had a minor cut above his lip, which was not such that it required hospital care or any immediate medical attention." (Docket #141-5 ¶ 7). "Aside from the cut above his lip, Mr. Hunt denied that he had any medical problems. He also denied taking any medications." (*Id.* ¶ 8).

A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). The defendants have submitted evidence that Mr. Hunt had no obvious injury requiring treatment, that Mr. Hunt himself did not assert that he had a serious injury, that he did not initially request treatment, and that when he finally asked for medical attention the defendants sent him to the hospital. The evidence before the court doesn't suggest that Mr. Hunt had a serious medical need on July 26, 2007, let alone establish that the defendants were deliberately indifferent to his problem.

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment (docket #141), and DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: June 9, 2009

　　　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court

cc: J. Hunt
　B. Clayton/D. Jensen/J.McCrum